*844 OPINION.
Sieficin:
The question to be decided is whether the transactions between the petitioner or its stockholders and the L. S. Starrett Co. resulted in a sale by the petitioner of its assets pertaining to the indicator business as contended by the respondent, or the sale of stock by the stockholders as contended by the petitioner.
The L. S. Starrett Co. desired to obtain the indicator business conducted by the petitioner. To accomplish this it negotiated with W. H. Eeisner, secretary of the petitioner. Eeisner, the holder of 37 shares of stock, obtained the promises of Moller and MiddlekaufF to sell their shares of stock to the Starrett Company for $400 per share. A check for $25,000 was drawn by the L. S. Starrett Co. in favor of the W. H. Eeisner Manufacturing Co. and it was sent to W. H. Eeisner. Eeisner deposited this check with the Maryland Surety & Trust Co. with instructions to pay each of the stockholders of the petitioner the amount due them when they delivered their stock. On August 31, 1920, each of the stockholders turned over their stock to the L. S. Starrett Co. and received checks therefor in the following amounts:
W. H. Eeisner_$14, 800
Y. E. Middleltauff_ 3,200
M. P. Moller_ 6,000
The remaining $1,000 of the amount deposited by the Starrett Company was credited to the account of W. H. Eeisner.
Sometime in December, 1920, A. H. Starrett turned over all of the stock to Eeisner in compliance with an understanding previously had.
Sometime in December, 1920, two new directors were elected to the board of directors of petitioner and on December 20,1920, a directors’ meeting was held at which a resolution was passed providing that all the material and patents pertaining to the dial test indicator business should be transferred to the L. S. Starrett Co. for a consideration of $5. The petitioner did not receive the consideration of $5.
*845 On May 13, 1921, the Starrett Company issued a check for $2,060 to Elmer Middlekauff. This amount was paid as a bonus for services rendered and as a salary or for expenses.
On June 8, 1921, the L. S. Starrett Co. drew a check payable to Reisner in the amount of $22,200. Previous to this on March 31,1921, it drew a check in the amount of $10,000 payable to W. H. Reisner Manufacturing Co. Both of these checks were cashed by Reisner.
On his income-tax return for 1920, Reisner included $14,800 as income from the sale of his stock to the L. S. Starrett Co. The balance which he received was entered in his return as a bonus from the Starrett Company.
The L. S. Starrett Co., on its books of account, treated these transactions as being with the petitioner.
There is evidence in the case which is consistent with either theory of the question except for the fact that there vas a change in ownership of the stock. The three checks issued by the Maryland Surety & Trust Co. on August 31, 1921, were in consideration of the transfer of the stock. The check for $2,060 received by Middlekauff was solely for services and expenses. Likewise, the two checks which Reisner received in the amounts of $22,200 and $10,000, as well as the amount of $1,000 which the Maryland Surety & Trust Co. credited to Reisner’s account constituted a bonus or compensation to Reisner for his services to the Starrett Company.
In the case of United States v. Board, et al., 14 Fed. (2d) 469, the court construed a contract entered into by all of the stockholders of the Dixie Motor Car Co., a Kentucky corporation and the Kentucky Wagon Manufacturing Co., whereby the stockholders contracted to transfer to the Wagon Company all of the assets of the Dixie Motor Car Co. and also the stock held by each stockholder. The court in holding that this was a transfer of stock by the stockholders and not a transfer of assets by the corporation stated:
* * * If the court were forced to construe this contract upon its face alone, there would be some difficulty in determining just what the parties were attempting to do, as on its face it contains many features of a sale of stock by the stockholders, as well as provisions which ordinarily would be found only in a contract selling the assets of a corporation. In such a situation, even as between the parties to the contract, the court would be justified in resorting to extraneous evidence to determine what the real intention of the parties was.
*******
There is another cardinal rule in the construction of contracts which are susceptible of two meanings, viz., that the construction should be given, if the facts justify it, which would render the contract enforceable, rather than to adopt a construction which would render it unenforceable.
With these principles in mind, it is difficult to reach any other conclusion than that this contract was a sale of stock by the stockholders. To construe the contract as one of sale of assets of the corporation would, in effect, be to de- *846 dare it an unenforceable contract, because it is well settled that stockholders, as sucb, under the Kentucky law, cannot sell the assets of a corporation.
In the instant proceeding the only agreements to which the L. S. Starrett Co. was a party were the agreements with W. H. Ileisner and E. Y. Middlekauif. The contract with Middlekauif did not purport to cover the transfer of any property except the stock which Middlekauif owned. The agreement with Ileisner provided for the acquisition by the Starrett Company of both stock and corporate assets. Under the reasoning of the cited case, we hold that the contracts entered into by the stockholders passed title to the stock only and that the amounts paid by the Starrett Company were to the stockholders of the petitioner for their stockholdings. The respondent has erred in holding that the petitioner was a party to the sale

Judgment will be entered under Rule 50.